**SCHWARTZ v. PETERSON, et ux.**
No. 77-244-CA(L)01-D.
Circuit Court, Palm Beach County.

August 29 and September 28, 1977.

Stanley H. Spieler, Miami, for the plaintiff.

Richard B. Mateer, Boca Raton, for the defendants.

Robert L. Wunker, Pompano Beach, for the third party purchaser.

DANIEL T. K. HURLEY, Circuit Judge.

*Order denying defendants' motion to vacate and set aside default and final judgment, setting future hearing dates, and reserving ruling on plaintiff's motion to disburse funds, August 29, 1977:* This results from a mortgage foreclosure action. Defendants-mortgagors have moved to set aside a default and final judgment rendered against them and in favor of Theodore Schwartz, the mortgagee. From the testimony and evidence presented, the court makes the following —

### Findings of fact

1. For the past twenty years, Collins E. Peterson has worked for IBM Corporation, first as a computer assembler and now in the quality assurance department. He resides with, and supports his wife, a married daughter and two grandchildren.

In 1972, Mr. Peterson was transferred from New Jersey to Florida. He and his wife purchased a home in Boca Raton for $38,500 (the appraised market value of the home today is $48,000). Apparently IBM maintains a program which guarantees a base sale price for a transferred employee's home. Thus the Petersons left New Jersey still owning their home there, but had it up for sale. Understandingly, this was a period of financial strain and when a storm damaged the New Jersey home, the Petersons resorted to the Metropolitan Mortgage Insurance Company in order to obtain funds to repair the storm damage. By giving a second mortgage on their Boca Raton home, the Petersons received $5,400 from Theodore Schwartz, the plaintiff in this action.

Throughout their married life, Mrs. Peterson has handled the family's financial affairs. The Metropolitan-Schwartz note was payable in monthly installments of $125 and appears to have been regularly paid from November of 1973 until July of 1976.

2. The Metropolitan-Schwartz note became delinquent in July, 1976; $2,570.70 remained as the unpaid principal balance. Thereafter, the following sequence of events occurred —

> (a) January 21, 1977—Complaint to foreclose mortgage filed;

(b) January 26, 1977—Mrs. Peterson served with complaint;

(c) February 18, 1977 — Default entered;

(d) April 5, 1977 — Summary final judgment granted;

(e) April 25, 1977 — Public sale of Peterson home, sale price $5,000;

(f) May 13, 1977 — Defendants file motions to: set aside default judgment; correct final summary judgment; vacate clerk's sale and set aside certificate of title.

3. On January 26, 1977, Palm Beach County Deputy Sheriff George Geschiedt delivered service of process to Mrs. Peterson for herself and for her husband. The deputy informed her that the complaint required an answer within twenty days. By her own admission, Mrs. Peterson glanced at the papers, stuck them in a drawer in her room and then threw them away the next day. Not until after the judicial sale, did she inform or admit to her husband that she had been served with legal process.

4. During the time sequence set forth in paragraph 3 above, Mrs. Peterson was undergoing a severe emotional disturbance which prevented her from facing an additional family crisis, or in communicating with her husband about that problem. Her actions of throwing away the complaint and failing to notify her husband of its contents were a direct result and consequence of her emotional condition of unresolved anxiety.

Based upon the foregoing findings of fact, the court reaches the following —

### Conclusions of law

1. Mrs. Peterson was not incompetent at the time of service of process.

While defense counsel, in argument, has referred to ". . . the confused and incompetent state of defendant wife's mental condition," and while some of Mrs. Peterson's acts during this time period do seem irrational, the standard to establish de facto incompetency has not been met. It has not been shown that Mrs. Peterson was generally incapable of either managing her property or caring for herself, or both. *Campbell v. Stoner,* 249 So.2d 474 (Fla. 3d DCA 1971). On the contrary, throughout this time and to the present, Mrs. Peterson has held a demanding job outside the home and has appeared to be a responsible and capable individual.

2. The defendants have established "excusable neglect" under Rule 1.540(b), Fla.R.Civ.P.

If, as the court has found, there is an appreciable distinction between one who is classifed as an incompetent and one who is found to be suffering from a severe emotional condition, then the latter state, if proven to have a direct, causal bearing upon the action or inaction under review, will justify the invocation of the rubric of "excusable neglect" under Rule 1.540(b).

Traditionally, "excusable neglect" has been cited to vacate default judgments where there has been a failure to act and where that failure is susceptible of a rational explanation which does not amount to gross or repeated negligence. See, e.g., *Espinosa v. Racki*, 324 So.2d 105, (Fla.3d DCA 1975) and *Associated Medical Institutions, Inc. v. Imperatori*, 338 So.2d 74 (Fla. 3d DCA 1976). The concept of excusable neglect is purposefully elastic and flexible. ". . . [T]he facts of each case are of singular importance in determining whether or not relief . . . should be granted." *Edwards v. City of Fort Walton Beach*, 271 So.2d 136, 137 (Fla. 1972).

Looking again to the case at bar, it is obvious that Mrs. Peterson failed to act. Based upon the evidence submitted, the court has found that her failure was directly attributable to her emotional condition. In this context, her failure to communicate with her husband and the failure of both Petersons to file a timely answer constitutes "excusable neglect."

In reaching this determination the court is not unmindful of the following language from *American National Bank v. Lau*, 268 So.2d 567, 571 (Fla.2d DCA 1972) which has been cited by counsel for the third party purchaser in opposition to the defendants' motion —

> As to this, we observe at the outset that allegations of her mental incompetency relate more to the sufficiency of an excuse in failing to protect her allegedly infringed rights than they do to establishing any of the foregoing augmenting grounds for relief such as mistake, accident, surprise, etc. Accordingly, these allegations add little, if anything to the alleged inadequacy of price.

It should be noted, however, that the above paragraph does not refer to the establishment of "excusable neglect" as used in Rule 1.540(b). Rather, it deals with the interrelationship between an allegation of incompetency and the legal criteria used in considering a motion to vacate a judicial sale. As such, *Lau* is neither at odds with the court's finding of excusable neglect, nor is *Lau* applicable in the present context of weighing defendants' motion to set aside the default and final judgment.

3. Defendants have failed to establish a meritorious defense.

In addition to proving that his neglect was excusable, a defendant must also establish that he has a meritorious defense. *Perry v. University Cabs, Inc.,* 334 So.2d 914 (Fla.3d DCA 1977). ". . . [T]he absence of either of these elements will defeat an attempt to set aside a default." *Clark v. Roberto's, Inc.,* 320 So.2d 870 (Fla. 4th DCA 1975). Though counsel for the defendants has argued ". . . that the defendants herein have established a meritorious defense," there has been a consistent admission that the Metropolitan-Schwartz mortgage was in default. Furthermore, defendants' motion to vacate the default and final judgment fails to satisfy the prerequisites set forth in *Perry,* supra. See also *Campbell v. Werner,* 232 So.2d 252 (Fla. 3d DCA 1970).

Accordingly, it is ordered and adjudged that the defendants' motion to vacate and set aside the default and summary final judgment entered in this cause in favor of Theodore Schwartz is denied.

It is further ordered and adjudged that the defendants' motions to (1) vacate the clerk's sale; (2) set aside certificate of title; and (3) correct final summary judgment shall be set for hearing on Saturday, September 10, 1977 at 10 A.M. in Room 209 of the South County Courthouse, Delray Beach, Florida. Said hearing may be waived upon mutual agreement of the parties and after notice to the court. In either event, should the parties desire to file additional memoranda on the remaining motions, said memoranda shall be submitted to, and received by the court, on or before Saturday, September 10, 1977.

It is further ordered and adjudged that the court reserves ruling on the plaintiff's oral motion to direct the clerk to disburse funds from the registry of the court.

*Order vacating judicial sale and setting aside certificate of title, September 28, 1977:* This cause came on before the court upon defendants-mortgagors' motion to vacate a judicial sale and to set aside the certificate of title recorded in favor of the third party purchaser, John Crescent, Inc. The cause was before the court on an earlier occasion upon the defendants' motion to vacate and set aside a default and final judgment. On August 29, 1977 the court entered an order denying that motion and in its order set forth findings of fact which are herewith affirmed and explicitly incorporated and relied upon for this order.

While the court fully realizes that a confirmed judicial sale carries with it a presumption of regularity, *Southern Realty and*

*Util. Corp. v. Belmont Mtg. Corp.*, 186 So.2d 24, 25 (Fla. 1966), the following rule from *Arlt v. Buchanan*, 190 So2d 575, 577 (Fla. 1966), must be applied to the facts of this case —

> The general rule is, of course, that standing alone mere inadequacy of price is not a ground for setting aside a judicial sale. But where the inadequacy is gross and is shown to result from any mistake, accident, surprise, fraud, misconduct or irregularity upon the part of either the purchaser or other person connected with the sale, with resulting injustice to the complaining party, equity will act to prevent the wrong result.

Applying the above rule to the case at bar, I first conclude that the purchase price was inadequate and that the inadequacy was in fact gross. The sale price was $5,000. Today the home has an appraised value of $48,000 and the defendants have approximately $30,000 equity in the home.

Secondly I conclude that the inadequacy of the price was a direct result of Mr. Peterson's failure to attend the sale, which in turn was directly caused by Mrs. Peterson's failure to inform her husband of the fact that she had been served with legal process and that a foreclosure action was pending. I have previously found and again reiterate that Mrs. Peterson's actions of throwing away the complaint and failing to notify her husband of its contents were a direct result and consequence of her emotional condition of unresolved anxiety.

Mrs. Peterson's emotional condition and those subsequent events which were directly occasioned by it constitute the kind of "mistake, accident or surprise" which are legally sufficient to invoke the equity powers of the court and prevent a wrong result. See *Van Delinder v. Albion Realty & Mortgage, Inc.* 287 So.2d 352 (Fla. 3rd D.C.A. 1973) and *Florida Fertilizer Mfg. Co. v. Hodge*, 60 So. 127 (Fla. 1912). Though from a different factual context, I believe that the words of Judge Walden in *Roberts v. J. I. Kislak Mortgage Corporation*, 257 So.2d 599 (Fla. D.C.A. 1972), have application here —

> If there are doubts as to the proper outcome of this appeal, and we have none, we suggest that such doubts and equities must be resolved in favor of the property owner and against the stranger, a casual bidder, who by a gross combination of error and happenstance was the successful bidder at the foreclosure sale to the end that he now stands on the brink of acquiring realty worth about $14,000 for a paltry bid of $100. Such a windfall should not be sanctioned at the owners' expense . . . Rules and procedures, while important, should not receive priority over substance and manifest justice.

Accordingly, it is ordered and adjudged that the defendants' motions to vacate the clerk's sale and to set aside the certificate of title filed in this cause in favor of the third party purchaser, John Crescent, Inc., are granted.

It is further ordered and adjudged that the final summary judgment entered in this cause in favor of the plaintiff be amended to include interest on $3,541.56 at the rate of 10% per annum from April 5, 1977, up until the entry of this order, and shall include an additional attorney's fee in the amount of $1,000.

|  |  |
|---|---|
| Final summary judgment | $3,541.56 |
| Accrued interest | |
| 10% per annum from 4/5/77 | 170.72 |
| Additional attorney's fee | 1,000.00 |
| Total: | $4,712.28 |

If the total sum with interest at the rate of 10% per annum, as set forth in plaintiff's note, and all costs of this action accruing subsequent to this amended final summary judgment are not paid within seven days from this date, the clerk of this court shall sell the property at public sale on                    , 1977, at 11 A.M., to the highest bidder for cash, at the southwest door of the Courthouse, Palm Beach County, West Palm Beach, Florida, in accordance with Section 45.031, Florida Statutes.

It is further ordered and adjudged that the defendants' equity of redemption shall be redeemed by payment of the amended final summary judgment through the registry of this court, should such redemption be made, the clerk is directed to make payment to the plaintiff, and issue a certificate of redemption to the defendants.

It is further ordered and adjudged that the clerk of this court immediately disburse the $5,000 paid by the third party purchaser, John Crescent, Inc., to such purchaser.

It is further ordered and adjudged that within 90 days of the rendition of this order the defendants shall reimburse the third party purchaser, John Crescent, Inc., in the sum of $750, for attorney's fees expended in this cause. *Quinn Plumbing Co. v. New Miami Shores Corporation*, 129 So. 690, 692 (Fla. 1930), and *Surratt v. Fleming*, 322 So.2d 39 (Fla. 1st D.C.A. 1975) (McCord, J., dissenting).

It is further ordered and adjudged that jurisdiction of this action is retained to enter further orders as are deemed appropriate and just.